## DUNCAN

### v.

## CITY OF LYNCHBURG.

*(Supreme Court of Appeals of Virginia, Feb. 8, 1900.)*

[34 S. E. Rep. 964.]

**Municipal Corporations—City Charter—Construction.***

The power conferred by Lynchburg City Charter, c. 6, § 7 (Acts Assem. 1895–96, p. 201), providing (subsection 3) that the council shall have power "to purchase, hold, sell, and convey real and personal property necessary for its uses and purposes," must be exercised within the limits of the city.

**Same—Powers as to Property—Rock Quarry.**

It is not indispensable to the objects for which a municipal corporation was created that it should own and operate a rock quarry.

**Same—Same—Same—Ownership and Operation—Injury by Employee —Liability of City.**

If the power to acquire and operate a rock quarry can be implied from Lynchburg City Charter, c. 6, § 7, authorizing the city (subsection 39), in connection with the county of Campbell, inter alia, to pave and macadamize the county highways within two miles of the city, it would not be liable for an injury caused by its agents or employees in the exercise of such power, as such section also provides that it shall not be construed to fix any liability for the improper exercise of the powers conferred, except damages for land condemned for public highways.

**Same—Action against for Nuisance—Demurrer to Declaration—Judicial Notice.**

Whether or not the work in which city officials were engaged when a nuisance, complained of, was created, was within the powers of the city, may be raised by demurrer to the declaration, as judicial notice will be taken of its charter.

---

*See monographic note on "Municipal Corporations" appended to Danville v. Pace, 25 Gratt. 1 (Va. Rep. Anno.).

Error to corporation court of Lynchburg.

Case by one Duncan against the city of Lynchburg. From a judgment for defendant on sustaining a demurrer to the declaration, plaintiff appeals. Affirmed.

*A. S. Hester*, for plaintiff in error.

*N. C. Mauson*, for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action on the case against the city of Lynchburg for creating and continuing a nuisance near the premises of the plaintiff, ·to the damage of the health and comfort of himself and family.

It is averred in the declaration that the defendant, while operating a rock quarry outside of the limits of the city, erected a privy for the use of its employees, including its chain gang, over a stream of water which runs under the front porch of the dwelling house occupied by the plaintiff, situated near by, and just below the quarry, and so polluted the stream as to render his premises unfit for habitation, and to cause serious sickness in his family.

The defendant demurred to the declaration upon the ground that the injury complained of was not caused by an act done within the scope of the power and authority of the city, but was the result of an ultra vires act, for which the city was not liable.

The trial court sustained the demurrer· and gave judgment for the defendant. To that judgment this writ of error was awarded.

The question presented for our determination is whether the nuisance complained of was created or continued by the agents or employees of the defendant city while engaged in a work· which was within its corporate powers.

In order to render a municipal corporation liable in damages for the torts of its agents and employees, it is necessary, among other things, that the injury complained of be caused by, or result from, an act done in the exercise of some power conferred upon it by its charter or other positive enactment.

"If the act complained of," says Judge Dillon, "necessarily lies wholly outside of the general or special powers of the corporation, as conferred in its charter or statute, the corporation can in no event be liable to an action for damages, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command.    *    *    * But, if the wrongful act be not in this sense ultra vires, it may be the foundation of an action of tort against the corporation, either when it was done by its officers under its previous direct authority, or has been ratified or adopted expressly or impliedly by it, or when it was done by the officers, agents, or servants of the corporation in the execution of corporate powers or the performance of corporate duties of a municipal nature, and was done so negligently or unskillfully as to injure others, in which case the corporation is liable for the carelessness or want of skill of its officers or immediate servants or agents in the course of their authorized employment, without express adoption or ratifying act." 2 Dill. Mun. Corp. (4th Ed.) § 968 ; Smith v. City of Rochester, 76 N. Y. 506 ; Cavanagh v. City of Boston, 139 Mass. 426, 1 N. E. 417 ; Horn v. Mayor, etc., 30 Md. 218.

It is the settled law of this state that a municipal corporation possesses and can exercise the following powers, and none others : First, those granted in express words ; second, those necessarily or fairly implied, or incident to the powers expressly granted ; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable.    City of Winchester v. Redmond, 93 Va. 711, 714, 25 S. E. 1001 ; Railway Co. v. Dameron, 95 Va. 545, 548, 28 S. E. 951 ; 1 Dill. Mun. Corp. § 89.

By section 7, c. 6, of the charter of the city (Acts Assem. 1895–96, p. 201), it is provided that the council shall, in addition to the general powers vested in it by the laws of the state, have power "to purchase, hold, sell, and convey all real and personal property necessary for its uses and purposes" (subsection 3) ; "to erect in or near the city suitable work houses, houses of correction or reformation and houses for the reception and maintenance of the poor and destitute" (subsection 5) ; "to establish and regulate public squares and parks in or near the city," and to acquire, by purchase, condemnation, or otherwise, the land deemed necessary for such uses (subsection 6) ; "to establish water works or gas works within or without said city" ; to acquire land for such purposes by purchase or condemnation ; and to protect from injury or pollution by proper penalties said works or anything connected therewith within or without the city, "and under this authority to prevent the pollution of the water in the river by prohibiting the throwing of filth or offensive matter therein for a distance of six miles above the limits of the city" (subsection 7) ; "to establish or acquire by purchase and to operate within or without the corporate limits suitable works for the generation of electricity for illuminating or other purposes, and to acquire lands for such use by purchase or condemnation" (subsection 8) ; "to provide in or near the city lands to be used as burial places for the dead and to improve and care for the same and the approaches thereto" (subsection 17) ; and, concurrently with the board of supervisors of Campbell county, "to take care, supervision and control for a distance of two miles from the city limits, of all public roads extending from the city into Campbell county, and jointly with said supervisors to close, extend, widen, narrow, lay out, graduate, pave, macadamize and otherwise improve and alter said roads for such distance and to keep the same in good order and repair and to condemn the necessary land for the purpose. * * * Nothing contained herein shall be construed as compelling the exercise of the powers herein given

or as fixing any liability on the said city for the failure to exercise or the improper exercise of the said powers, except damages for the land condemned, which are to be ascertained and fixed in the manner provided by the general laws of the state." Subsection 39.

Power is given to the city councils, under the general law, to provide in or near the city waterworks, cemeteries, hospitals, and pest houses. Code, §§ 1038, 1719, 1721.

None of the provisions of the charter nor of the General Statutes above quoted expressly confer upon the city the right to acquire and operate a rock quarry. If such power can be necessarily or fairly implied from the powers expressly granted, it must be under subsections 3 and 39 of section 7, c. 6, of the charter. The power given by subsection 3, which authorizes the city to purchase, hold, sell, and convey all real and personal property necessary for its uses and purposes, must, I apprehend, be exercised within, and not without, the limits of the city ; for the general rule is that the power of a municipal corporation is confined to its own territorial limits, and, without some special provision authorizing it, it cannot possess any control or rights in or over lands lying without those limits. Denton v. Jackson, 2 Johns. Ch. 320, 336 ; Riley v. City of Rochester, 9 N. Y. 64 ; City of Coldwater v. Tucker, 36 Mich. 475, 477 ; 2 Dill. Mun. Corp. § 565.

"Municipal corporations," says Judge Dillon in the section cited, "being created chiefly as governmental agencies, and for the attainment of local objects merely, the general rule is that they cannot purchase and hold real estate beyond their territorial limits unless the power is conferred by the legislature. It has been expressly decided that a conveyance to a municipal corporation of lands beyond its boundaries for the purpose of a street is void, though the corporation has by its charter power 'to purchase, hold, and convey any real property for the public use of the corporation.' The author, however, is inclined to think that there are purposes for which such corporation may

without special grant purchase and hold extraterritorial lands, as for a pest house, cemetery, and the like objects of a municipal character."

If it be true, as the learned author is inclined to think, that a municipal corporation without special authority may purchase and hold lands without its limits for some purposes, it must be because the lands are indispensably necessary to enable it to protect the health and well-being of its people.

It might be convenient for a municipal corporation to own and operate a rock quarry, but it is manifestly not indispensable that it should do so, in order that it may accomplish the objects of its creation.

Again, the provisions of the charter conferring special power upon the city to acquire lands without the city for workhouses, houses of correction or reformation or the reception of the poor, public squares or parks, waterworks and gasworks, electric plants, the burial of the dead, and highways in the county of Campbell, would seem to exclude the idea that it was the intention of the legislature, in granting the charter, to confer any other extraterritorial powers upon the city than those expressly named.

If the power to acquire and operate a rock quarry can be necessarily or fairly implied from the provisions of subsection 39 (section 7, c. 6, of the charter), which authorizes the city, in connection with the county of Campbell, to pave and macadamize, among other things, the highways of that county for a distance of two miles from the city, it would not aid the plaintiff ; for it is expressly provided in that section that nothing in it shall be construed as compelling the exercise of the powers conferred by it, or as fixing any liability on the city for the failure to exercise, or the improper exercise of, the powers conferred, except damages for lands condemned for public highways.   The object of that provision was manifestly to protect the city from any other or further liability than the county of Campbell (its associate in establishing and maintaining

the roads) would be under in exercising the powers conferred. And, as is well settled, the county being one of the political subdivisions of the state, it would not be liable in damages to the plaintiff if it or its agents or employees had caused the injury complained of.    Fry v. Albemarle Co., 86 Va. 195, 9 S. E. 1004 ; Field v. Albemarle Co. (Va.) 20 S. E. 954 ; 2 Dill. Mun. Corp. §§ 23, 963, note 1; 1 Shear. & R. Neg. § 256.

The contention of the plaintiff in error that the question of whether or not the work in which the city officials were engaged when the nuisance complained of was created was within its powers could not be raised by demurrer, but only by a plea, is wholly untenable.    The courts take judicial notice of the charters of municipal corporations.    1 Dill. Mun. Corp. § 83 ; 4 Minor, Inst. 1210, 1211 ; Code, § 3328 ; 1 Greenl. Ev. § 4, note 3. And, if the cause of action stated in the declaration is one for which the corporation is not liable, a demurrer is the proper and usual way to raise the question.    Sayre v. Turnpike Road, 10 Leigh, 474 ; Noble v. City of Richmond, 31 Grat. 271 ; Orme v. City of Richmond, 79 Va. 86 ; Powell v. Town of Wytheville, 95 Va. 73, 27 S. E. 805 ; Maia's Adm'r v. Directors, 97 Va. —, 34 S. E. 617.

It follows from what has been said that the defendant was not liable in damages for the injury complained of, that the demurrer was properly sustained by the trial court, and that the judgment must be affirmed.