## Wytheville.

RICHMOND & WEST POINT LAND, NAVIGATION, AND IMPROVE-
MENT CO. *v.* TOWN OF WEST POINT.

June 17, 1897.

1. MUNICIPAL CORPORATIONS—*Power to borrow money—Power to purchase real estate and give bonds therefor.*—A municipal corporation cannot borrow money and issue its bonds therefor unless the power to do so be conferred by legislative enactment expressly given, or clearly implied. But every municipal corporation has the power to purchase and hold all the real estate reasonably necessary to the proper exercise and enjoyment of the powers conferred upon it, or essential to the purposes for which it was created, and, as incident to this power, may purchase on credit and bind itself by the execution of a bond, note, or other non-negotiable security for deferred payments.

2. EVIDENCE—*Burden of proof in action on municipal bond given for purchase of real estate.*—In an action against a municipal corporation on a bond, or other common law security given for deferred payments on real estate purchased by the corporation, the defendant's plea of *nil debet* puts the burden of proof on the plaintiff to show that the real estate purchased by the defendant was reasonably necessary to the proper exercise and enjoyment by it of the powers and duties conferred upon it by its charter.

Argued at Richmond.   Decided at Wytheville.

Error to a judgment of the Circuit Court of King William county, rendered October 3, 1895, in an action of Debt, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

This action was instituted on four notes of the town of West Point. The notes are similar to each other in form, and the following is a copy of one of them:

"West Point, Va., Sept. 28, 1887.

"$1,000.00

On Aug. 1, 1888, the town of West Point, promise to pay to the Richmond and West Point Land, Navigation, and Improvement Co., or order, without offset, one thousand dollars. Payable at the treasurer's office in the town of West Point, value received. The drawer and endorser of this note hereby waive the benefit of homestead exemption as to this debt. This note bears interest from Aug. 1, 1887.

"E. WILKINSON,

"Mayor.

"Town of West Point, Va."

The amended declaration contained eight counts in debt, and two special counts. The following are copies of two of the counts in debt, the two special counts, and of the breach:

"In the Circuit Court of King William county, county of King William---to wit:

"Richmond and West Point Land, Navigation, and Improvement Company, a corporation created under the laws of Virginia, complains of the town of West Point, of a plea of debt, that it render the *plaintiff*, the sum of $4,175, with interest thereon from the 1st day of August, 1887, which to the plaintiff the said defendant owes, and from it unjustly detains. And thereupon the said plaintiff says that heretofore —to-wit: On the 28th day of September, 1887, at the county aforesaid, the said defendant, acting by E. Wilkinson, mayor of the said town of West Point, who was then and there the duly elected and qualified mayor of said corporation, and duly authorized to act in the premises, made its certain promissory note in writing, bearing date the day and year aforesaid, and subscribed his name thereto, and affixed the seal of said corporation thereto, by which said note, the said defendant then and there promised to pay on August the 1st,

1888, to the plaintiff, the sum of $1,000, with interest thereon, from the 1st day of August, 1887, parcel of the sum above demanded, for value received.

"And the plaintiff further says that heretofore, to-wit: On the 28th day of September, 1887, at the said county, the said defendant, acting by E. Wilkinson, mayor of the said town of West Point, who was then and there the duly elected and qualified mayor of said corporation, and duly authorized to act in the premises made its certain promissory note in writing, and subscribed his name thereto, bearing date the day and year aforesaid, by which said note, the said defendant then and there promised to pay on August the 1st, 1888, to the plaintiff, the sum of $1,000, with interest thereon, from the 1st day of August, 1887, parcel of the sum above demanded, for value received. And the said plaintiff further says, that heretofore, to-wit: On the 28th day of September, 1887, at the county aforesaid, the said defendant, acting by the said E. Wilkinson, mayor of the said town of West Point, who was then and there the duly elected and qualified mayor of said corporation, and duly authorized to act in the premises, made a certain other promissory note in writing, bearing date the day and year last aforesaid, and subscribed his name thereto, by which said last mentioned note, the said defendant then and there promised to pay on the 1st day of August, 1889, to the said plaintiff, the further sum of $1,000, with interest from the 1st day of August, 1887, another parcel of the sum above demanded, for value received.

"And the plaintiff further says that heretofore, to-wit: On the 28th day of September, 1887, at said county, the said defendant was indebted to the said plaintiff in the sum of $4,175 for certain real estate situated in the town of West Point, and described in the plot of said town, made by J. M. Daniel, as lots numbers 951, 954, 955, 958, 959, 960, 961, 949, 950, which plot is recorded in the clerk's office of the County Court of King William county, before that time sold

by the said plaintiff to the said defendant, at its special instance and request, to be paid by the said defendant, to the said plaintiff as follows: $1,000 on the 1st day of August, 1888, with interest from the 1st day of August, 1887; $1,000 on the 1st day of August, 1889, with like interest; $1,000 on the 1st day of August, 1890, with like interest; and $1,175 on the 1st day of August, 1891, with like interest; whereby, and by reason of the said sum of money being and remaining wholly unpaid, an action has accrued to the said plaintiff to have of and from the said defendant the said sum of $4,175, above demanded.

"And for this also, that the said defendant afterwards, to-wit: On the 28th day of September, 1887, accounted with the said plaintiff of and concerning divers sums of money before that time, and then due and owing, and in arrear and unpaid, from the said defendant, was then found to be in arrear and indebted to the plaintiff, in the further sum of $4,175 to be paid by the said defendant to the said plaintiff, as follows, that is to say, the sum of $1,000, with interest thereon from the 1st day of September, 1887, to be paid on the 1st day of August, 1888; the sum of $1,000, with interest from the 1st day of August, 1887, to be paid on the 1st day of August, 1889; the sum of $1,000, with interest from the 1st day of August, 1887, to be paid on the 1st day of August, 1890, and the sum of $1,175, with interest from the 1st day of August, 1887, to be paid on the 1st day of August, 1891, whereby and by reason of said last mentioned sums of money, to-wit: $4,175, being and remaining wholly unpaid, an action has accrued to the said plaintiff, to demand and have of and from the said defendant the said sum of $4,175, first above demanded.

"'Nevertheless, the said defendant, although often requested so to do, has not as yet paid the said sums of money, amounting to $4,175, above demanded, or any part thereof, to the said plaintiff, but has hitherto wholly neglected and

refused so to do, and still neglects and refuses so to do, to the damage of the said plaintiff, $4,175, and therefore it brings suit, &c."

*Pollard & Sands* and *James H. Dooley*, for the plaintiff in error.

*Isaac Diggs* and *H. I. Lewis*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

In the summer of 1887 the town of West Point, Va., purchased certain lots of land situated within its corporate limits from the Richmond and West Point Land, Navigation, and Improvement Company, for which it agreed to pay in the aggregate the sum of $4,175, which was divided into three notes of $1,000 each, and a note of $1,175, all dated the 28th of September, 1887, and falling due respectively on the 1st of August, 1888, the 1st of August, 1889, the 1st of August, 1890, and the 1st of August, 1891. Default having been made in the payment of these notes when they severally fell due, the plaintiff in error, in April, 1892, instituted an action in the Circuit Court of King William county against the town of West Point, for the recovery of the debt evidenced by the notes aforesaid. To the declaration there was a demurrer, which was overruled, and then by leave of court the plaintiff, in December, 1892, filed an amended declaration, to which, and to each count thereof, the defendant again demurred, and the demurrer was again overruled.

We are of opinion that the cause of action is properly stated, and there is no error in the judgment of the Circuit Court in overruling the demurrer.

The defendant thereupon pleaded *nil debet*, payment, and *non est factum*. The plaintiff demurred to the plea of *non est factum*, and also moved to strike it out, which demurrer and

motion the court overruled, and the plaintiff excepted, and thereupon issues were joined upon the several pleas.

The instrument sued on being a note, *non est factum* was not a proper plea, but its admission worked no injury to the plaintiff inasmuch as every defence relied upon by the defendant could have been made under its plea of *nil debet*. The ruling of the court, therefore, while erroneous, is not a ground for reversal. It comes within the class known as "harmless errors."

Neither party requiring a jury, and the whole matter of law and fact being submitted to the court, a judgment was rendered for the defendant, which the plaintiff moved to set aside. This motion the court overruled, and thereupon the plaintiff excepted and tendered its bill of exceptions, which was duly signed, and, upon its petition, a writ of error was awarded by one of the judges of this court.

In the oral argument and in the briefs a good deal was said with respect to the power of municipal corporations to bind themselves by the execution of commercial paper, but the law in regard to this particular form of obligation need not be specially enquired into, because the evidences of debt in the case before us are promissory notes, not negotiable. It was strongly urged by counsel for the defendant in error that the town of West Point had no authority to make the contracts sued on. In this view we cannot concur. Municipal corporations have the power to contract and be contracted with, and to purchase and hold real estate, and where the charter is silent, the limit of the capacity to purchase is that the land so purchased must be necessary to the proper exercise of the powers conferred upon it, or essential to the purposes for which it was created. The purchase may be upon a credit, for, while a municipal corporation may not borrow money and issue its obligations therefor without authority of the Legislature, it may purchase property necessary for the discharge of the duties and functions reposed in it, and as a con-

sequence of that power to purchase, may bind itself for the payment of the purchase money, and execute all proper evidences of debt except a negotiable instrument.    This subject was carefully investigated, and the conclusions reached by the court presented in a very able opinion by Judge Selden in the case of *Ketchum & others* v. *City of Buffalo*, 14 N. Y. 359. It is there said: "A municipal corporation, therefore, may, at common law, unless restrained by some statute, purchase and hold all such real estate as may be necessary to the proper exercise of any power specifically conferred, or essential to those purposes of municipal government for which it is created." And, in speaking of the right to purchase upon a credit and bind itself by bond for the payment of the purchase money, it is said, at page 363: "The power of corporations in general to make contracts and incur debts in the prosecution of their legitimate business, and to give their promissory notes for such indebtedness, would seem to be firmly established, not only by universal practice, but by repeated judicial decisions.    *   *   *    Sound reason, no less than authority, forbids that it should be held that a corporation may not incur a debt in the exercise of its appropriate powers, or may not purchase, upon a credit, property which is required for purposes authorized by its charter.    *   *   *    Having the power to make the purchase, it had authority to do so upon a credit to which there was no limit but its own discretion, and the right to give the bonds in question would follow as a necessary consequence, for power to contract a debt must carry with it power to give a suitable acknowledgment of the indebtedness."

The distinction is very forcibly presented in that case between the right of a corporation to purchase property upon a credit and bind itself by a bond or promissory note for its payment, and the right to borrow money in order to buy the same property.    It is conceded that the power to contract to pay A. $10,000 at the end of a year for certain work, and

the power to borrow $10,000 of B., upon a credit of a year, for the purpose of paying A. for doing the work, might seem at first view, to be substantially identical. The amount is the same, and the time of payment the same; the creditor only is different. But, says the court: "A little examination will show that there is a very material difference between the two. If the power of the corporation to use its credit is limited to contracting directly for the accomplishment of the object authorized by law, then the avails or consideration of the debt created cannot be diverted to any illegitimate purposes. The contract not only creates the fund, but secures its just appropriation. On the contrary, if the money may be borrowed, the corporation will be liable to repay it, although not a cent may ever be applied to the object for which it was avowedly obtained."

To the same effect see the opinion of Justice Bradley in *Nashville* v. *Ray*, 19 Wall. 468; 1 Dillon on Mun. Corp. (3d ed.), sec. 125, 561, 562, 563.

In *Nashville* v. *Ray, supra*, the power of municipal corporations to purchase property and to give evidences of indebtedness therefor is expressly recognized, but their right to borrow money and to bind themselves to its payment by commercial securities, unless authorized to do so by the Legislature, is expressly denied as "being too dangerous a power to be exercised by municipal bodies indiscriminately managed by persons whose individual responsibility is not at stake.  *  * No such power ought to exist, and no such power does exist, unless conferred by legislative enactment either expressly or clearly implied."

We are of opinion, therefore, that the town of West Point could lawfully purchase and hold all the real estate necessary to the proper exercise and enjoyment of the powers conferred upon it, and as an incident of this power to purchase could bind itself by the execution of evidences of debt such as are sued on in this case.

We are further of opinion that the plea of *nil debet* put the whole of the plaintiff's case in issue, and that the burden was upon the plaintiff to show that the real estate sold by it to the defendant in error was reasonably necessary to the exercise by the defendant in error of the powers and duties conferred upon it by the Legislature in its charter. This is a question of fact, the decision of which depends upon the testimony, and the Circuit Court upon that issue found for the defendant. Its judgment is before us for review upon this writ of error as upon a demurrer to the evidence, the nature and effect of which have been so frequently stated that it would be superflous to do more than to refer to some of the cases. *Trout* v. *Va. & Tenn. R. R. Co.*, 23 Gratt. 619; *Creekmur* v. *Creekmur*, 75 Va. 430; and *Johnson* v. *C. & O. R. R. Co.*, 91 Va. 171.

Applying this rule of decision we cannot say that the judgment of the Circuit Court was without evidence, or so plainly against evidence as to require its reversal, and it must therefore be affirmed.

*Affirmed.*