## MILLER

### *v.*

### MILLER'S EX'R.

*(Supreme Court of Appeals of Virginia, March 28, 1895.)*

[21 S. E. Rep. 471.]

**Promise to Make a Will—Proof Must Be Convincing.***
A court of equity will require the most convincing proof to sustain a claim that deceased agreed to make a will in favor of claimant, when he, in fact, did not do so.

**Judicial Sale—Parties.†**
In a suit to sell certain land, the beneficiary in a deed of trust upon the same, died after the appeal was perfected. The trustee in said deed was made a party, and all parties were before the court to enable it to distribute the proceeds of said sale except as above mentioned: *held*, that the failure to make the executor of said beneficiary a party was not error.

Appeal from circuit court, Frederick county.

Proceedings by Maggie C. Miller, executrix, and Robert W. Miller, executor, of Thomas M. Miller, deceased, against Joseph A. Miller to enforce a land bond. Judgment for complainants, and defendant appeals. Affirmed.

*Harrison & Byrd* and *Robt. M. Ward,* for appellant.

*Holmes Conrad,* for appellees.

---

*See generally, monographic note on "Wills," Va. Rep. Anno.

†See generally, monographic note on "Judicial Sales" appended to Walker *v.* Page, 21 Gratt. 636 (Va. Rep. Anno.).

Harrison, J., delivered the opinion of the court.

Dr. Thomas M. Miller died, leaving a last will and testament, dated October 10, 1878, by which he gave his wife, Maggie C. Miller, his personal estate absolutely, and his real estate for life, with remainder in the real estate, to be divided equally among his three brothers or their children, and appointed his brother, R. W. Miller, executor of said will. By a codicil dated April 14, 1879, he confirmed the will, and appointed his wife, Maggie C. Miller, as executrix. On the 3d day of February, 1890, this will was admitted to probate in the county court of Frederick county, and administration granted with the will annexed to Maggie C. Miller and Robert W. Miller, the executrix and executor named therein. Among other assets which came to the hands of these representatives was the following bond :

"$3,131.85. One day after ―――― I promise and bind myself to pay to Dudley L. Miller the sum of thirty-one hundred and thirty-one dollars and eighty-five cents, for value received. This is the balance due Dudley L. Miller on the farm purchased of him. This land bond is secured in the deed, and bears six per cent. per annum from date until paid. Witness my hand and seal this 2d day of November, 1880.
          "[Signed]          J. A. Miller.     [Seal.]"
Indorsed as follows :
"I this day assign the within land bond to Thomas M. Miller for value received, Nov. 5th, 1880.
          "[Signed]          D. L. Miller."

Said bond has several other indorsements thereon, which acknowledge the payment of interest to April 1, 1884. This bond is secured by vendor's lien (reserved) in a deed from Dudley L. Miller, dated November 2, 1880, conveying to Joseph A. Miller a tract of land containing about 635 acres, lying in the county of Frederick, subject, however, to the lien of a certain trust deed upon the same tract, executed by the grantor,

Dudley L. Miller, to William Byrd, trustee, dated October 15, 1878, to secure the payment of a bond of said Dudley L. Miller and Robert W. Miller, payable to Emily Funsten, for $4,424. This debt due to Emily Funsten was also assumed by Joseph A. Miller, the purchaser of said land, as part of the price to be paid therefor.

The personal representatives of Thomas M. Miller, deceased, filed their bill in the circuit court of Frederick county to enforce the payment of his land bond, charging that the principal, with a large amount of accrued interest, was long since due and unpaid. The complainants also set forth the prior deed of trust debt due to Emily Funsten, and pray that there may be an ascertainment of the liens, and a decree for the sale of the land to satisfy the same.

Joseph A. Miller, the owner of the land, Dudley M. Miller, the assignor of the bond to Thomas M. Miller, Emily Funsten, the beneficiary under the prior deed of trust, and William Byrd, the trustee in said deed of trust, are made parties defendant to this suit, answers under oath being waived.

To this bill Joseph A. Miller files his demurrer and answer, which answer is treated as a cross bill, in which he admits the general allegations of the bill to be true, but, as matter of defense and set-off against the bond sued on, respondent avers that in the lifetime of his father, Thomas C. Miller, respondent, and his three brothers, Robert W. Miller, Dudley L. Miller, and Thomas M. Miller, and his father, had an understanding in regard to the division of their father's estate, among themselves, by which it was agreed that $4,000 should be paid respondent Joseph A. Miller, which would be in full of his entire interest as heir in the estate of his father, and that $2,000 should be paid Thomas M. Miller, which would be in full of his entire interest as heir in the estate of his father ; that Dudley L. Miller and Robert W. Miller were to pay these sums to Joseph and Thomas, respectively, when they would be entitled to the father's entire estate ; that Dudley and Robert did pay respondent his $4,000, and executed their bonds to Thomas for his $2,000,

which bonds were not to be paid until their father died; that
when the father died they did pay Thomas M. Miller the $2,000
due him. Respondent further avers that Thomas M. Miller
agreed that in consideration of this disposition of his father's
estate he (Thomas) would leave a will, giving to his three broth-
ers $6,000, which sum represented the entire amount he had
received (including the $2,000), by way of advancement or
otherwise, as one of the heirs of his father. Respondent files
with his answer and cross bill four exhibits, which he says re-
late to this alleged verbal understanding. Those exhibits are
as follows:

### Exhibit 1.

"Know all men by these presents that I, Thomas C. Miller, of
this county of Frederick, state of Virginia, acknowledge, con-
fess, and declare the sum of four thousand dollars ($4,000.00),
paid by R. W. and D. L. Miller, my sons, to J. A. Miller,
paid on the morn from the receipt given to him by said R. W.
and D. L. Miller, is the full and equitable amount due him, with
the several amounts paid or caused to be paid, theretofore is
the full amount due him as an heir of my estate. And I fur-
ther declare, in order to more fully protect my sons R. W. and
D. L. Miller, that any will or declaration conflicting with this
acknowledgment made by me hereafter to be null and void.
In witness whereof to the within I set my hand and seal this
7th of Feb., 1878.    Thomas C. Miller. [Seal.]"

### Exhibit 2.

"Know all men by these presents, that I, Thomas C. Miller
of the county of Frederick, state of Virginia, acknowledge,
confess, and declare that the bond (held by my son Thos. M.
Miller, payable at my death, of the sum of $2,000.00) two thou-
sand dollars is the full amount due him as an heir of my estate,
personal and real. And I further declare, in order to more
fully protect my sons R. W. and D. L. Miller, that any will
or declaration conflicting with this acknowledgment made by

me hereafter is null and void. Feb. 9, 1879. Thomas C. Miller. [Seal.]''

Exhibit 3.

''Received of D. L. Miller one thousand dollars, the whole amount due me (from him) as heir of my father, T. C. Miller's estate (deceased) as per agreement dated Feb. 9th, 1879. Feb. 6th, 1889. Thomas M. Miller.''

Exhibit 4.

''Received of R. W. Miller one thousand dollars, the whole amount due me (from him) as heir of my father T. C. Miller's estate (dec'd), as per agreement dated Feb. 9, 1879. Feb. 6th, 1889.''

Respondent further alleges that he had acquired from his two brothers, Dudley and Robert, their interest in this claim against Thomas, and asks that the amount due from Thomas on this account, with interest, should be ascertained, and so much thereof as might be necessary applied to the payment of the bond sued on by the personal representatives of Thomas M. Miller, and the balance be decreed to be paid to respondent.

To this answer, treated as a cross bill, Maggie C. Miller, executrix of Thomas M. Miller, and complainant in the original bill, pleads, demurs, and answers, denying all the allegations of said cross bill, and especially the allegation that Thomas M. Miller agreed to give his brothers $6,000, or any other sum of money, at his death, and calls for full, clear, and positive proof of any such agreement. The cause was referred to a commissioner, who took the evidence offered in support of this alleged agreement, and made a report ascertaining that the deed of trust lien in favor of Emily Funsten, and the vendor's lien in favor of Thomas M. Miller's estate, were outstanding unpaid charges upon the farm of the defendant Joseph A. Miller ; and that no valid set-off existed in favor of Joseph A. Miller against the bond held by the personal representatives of Thomas M. Miller. The defendant excepted to this report, and on the

21st day of November, 1892, the court entered a decree which declared that the claim set up by Joseph A. Miller, the defendant in his answer, was not sustained by the proofs, rejected the same, overruled the exceptions taken to the commissioner's report, confirmed the said report, and decreed a sale of the farm for the satisfaction of the two liens reported. From this decree an appeal was allowed to this court.

The four exhibits filed with the answer of the defendant Joseph A. Miller would seem to indicate that Thomas C. Miller and his four sons did agree upon a division of the former's estate among the sons. The chief object appears to have been to secure an equal division of the estate. The agreement of the father set forth in Exhibits 1 and 2 is practically observed by him in two wills subsequently made, which are filed in the record. The first is dated December 7, 1880, in which he gives his entire estate to his two sons, Dudley and Robert, and says he has given his other two sons, Joseph and Thomas, what he believes is their just and equitable share of his estate. The second will is dated September 11, 1884. It revokes the first, and disposes of the estate exactly as in the first will, except that it gives Dr. Thomas M. Miller $1,200, and makes it a charge on the estate ; and says that Dudley and Robert are each to pay one-half of the legacy to Thomas ; and further says : "I have already advanced my son Joseph A. Miller more than his full share in my estate, and on that account I do not now devise or bequeath him anything." Dudley Miller in his deposition explains this $1,200 legacy to Thomas, by saying that his father came to the conclusion that the $2,000 he and Robert had agreed to pay to Thomas was more than his share of the estate, and that his father intended by this legacy to cut the amount down to $1,200, but that the $2,000 for which they had executed their bonds was paid as agreed upon.

It would seem probable that, if the father had been a party to an agreement by which his son Thomas was to make a will, leaving to his three brothers $6,000, all that had been advanced

him by his father, he would have at least referred to it when making a will disposing of his property ; and yet neither in the wills of Thomas C. Miller nor in the exhibits filed with respondent's answer is there one word to indicate the slightest evidence of an agreement on the part of Thomas M. Miller to leave in his will this or any other sum to his brothers. There is no mention of or reference to any such subject. The only other evidence offered in support of this claim of set-off is the testimony of Dudley L. Miller and Robert W. Miller. Their evidence was excepted to upon the ground that Thomas M. Miller, one of the parties to the alleged contract, being dead, rendered them incompetent. In order to qualify themselves, they made a gift of their interest in this alleged contract to their brother Joseph A. Miller. It was still insisted that they were liable as assignors and for costs. Joseph A. Miller then gave them a release from liability, by way of recourse or otherwise, on account of said transfer and assignment. A great many authorities are referred to on the question of the competency of these witnesses. In the view, however, taken by the court of this case, it is unnecessary to consider said authorities, or to pass upon that question ; the court being of opinion that said evidence is wholly insufficient to sustain the claim set up by the defendant Joseph A. Miller.

The witness Dudley L. Miller, in answer to fourth question on cross-examination, says : "When the agreement was ratified, Robert, Joseph, and myself were present; Thomas was not." In answer to another question, he says : "I said the debt held by Thomas M. Miller is a just debt, and Joseph ought to pay it, and I say so yet." In answer to another question, witness says : "I may have said that Thomas had a right to will his property as he chose."

The witness Robert W. Miller is shown not to be reliable, because it appears from the evidence of his family physician, introduced by the defendant, that he is a person of unsound

mind. His testimony does not, however, strengthen appellant's claims, but rather weakens it.

The debt asserted by the personal representatives of Thomas M. Miller is not denied. The claim of set-off relied upon by the appellant is supported by evidence too slight for serious consideration. There is not a word to be found suggesting a reason why Thomas M. Miller should have agreed to give his brothers $6,000 by his will,—a sum constituting the bulk of his estate, as appears from the record. There appears to have been no consideration for such a promise. The division of the father's estate appears to have been an equal one among his sons, and the pretension now set up by the appellant is without merit, and without proof to support it. It is a serious matter, when a man dies, for a claimant to come forward, and demand the estate, upon the ground that deceased had in his lifetime verbally promised or agreed to make a will giving his estate to said claimant, and that, too, in the face of a will which has given it to some one else. Such a claim naturally excites surprise, and a court of equity will always require the clearest and most convincing proof to sustain such a claim. Otherwise disappointed legatees could easily deprive the natural and chosen objects of a testator's bounty of the benefits he had seen fit to bestow.

Since this appeal was perfected, Emily Funsten, one of the defendants in the original suit, has died, and Robert M. Ward has qualified as her executor. It is insisted on behalf of this executor that the decree appealed from is erroneous, because the necessary parties have not been made to the suit. It appears that Joseph A. Miller, the owner of the land decreed to be sold, Dudley L. Miller, the assignor of the bond to Thomas M. Miller, William Byrd, the trustee in the deed securing the debt to Emily Funsten, and said Emily Funsten, are all made parties defendant ; and, so far as it appears from this record these are all the parties necessary to the suit. It

enables the court to make a complete title to the land when sold and to distribute the proceeds to the parties entitled thereto.

For the foregoing reasons the court is of opinion that there is no error in the decree complained of, and it must be affirmed.