## Richmond.

Donable's Administrator v. Town of Harrisonburg.

November 23, 1905.

1. Municipal Corporations—*Ultra Vires Acts—Operating Stone Quarry.*
   —In the absence of express authority, by charter or other positive
   enactment, a municipal corporation has no power to operate a stone
   quarry outside of its corporate limits, and is not liable for an
   injury negligently inflicted on an employee while it is operating
   such quarry. It is immaterial that the stone is to be used for the
   repair of streets which it is required to keep in order. The one
   power is not incidental to the other, and the operation of the quarry
   is an *ultra vires* act, and the municipality is not liable for its
   negligent performance.

Error to a judgment of the Circuit Court of Rockingham
county, in an action of trespass on the case. Demurrer to
declaration sustained. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Sipe & Harris, Chas A. Hammer* and *D. O. Dechert,* for the
plaintiff in error.

*T. N. Haas,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This is an action on the case against the town of Harrison-

burg, to recover damages for the death of plaintiff's intestate, caused by an explosion of dynamite at a rock quarry operated by the defendant outside of its corporate limits, at which quarry the decedent was employed as a laborer.

The defendant demurred to the declaration upon the ground that the operation of a rock quarry by the defendant outside of its corporate limits was an *ultra vires* undertaking, and, therefore, the defendant was not responsible in damages for the injuries to the decedent, which demurrer was sustained, and to that judgment of the Circuit Court this writ of error was awarded.

It is sought to distinguish this case from that of *Duncan v. City of Lynchburg*—decided by this court February 8, 1900, and reported in 2 Va. Dec. 700, 34 S. E. 964, 48 L. R. A. 331 by the fact alleged, that the stone gotten out by the decedent and others was to be for use on the streets of the defendant town, whereby this getting out of the stone was a mere incident of the work in which the town was engaged in the repair and maintenance of its streets, a work not only authorized but imposed upon the town as a duty by its charter. In other words, that the work in progress being primarily the repair and maintenance of the streets of the town, which is not only within the powers of the town but one of its absolute duties, and one of the considerations for the granting of its charter, for the failure in the performance of which duty the town is liable to respond in damages to any person injured in consequence of such failure, it is within the discretion of the town council, so long as the means adopted by it are such as to meet the requirement that the streets shall be kept in proper and safe condition for travel, to determine what means of repair and maintenance shall be used.

If that proposition could be maintained, a municipality might engage in limitless undertakings not authorized by its

charter in express words, or necessarily and fairly implied in or incidental to the powers expressly granted, the result of which would be to expose the resources of the municipality to constant danger of exhaustion.

The following statement of the law by Dillon, in his work on Municipal Corporations, sec. 89, has been often quoted with approval by this court, viz: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others:    First, those granted in express words; second, those necessarily or fairly implied in or incidental to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable.    Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied."    *Redmond* v. *Winchester,* 93 Va. 711; 25 S. E. 1001, 57 Am. St. Rep. 822; *Wallace* v. *Richmond,* 94 Va. 217, 26 S. E. 586, 36 L. R. A. 554; *Railway Co.* v. *Dameron,* 95 Va. 545; 28 S. E. 951; *Duncan* v. *Lynchburg, supra.*

It is equally well settled law that a municipal corporation is, as a general rule, restricted to its corporate limits in the exercise of its corporate powers.    *Duncan* v. *Lynchburg, supra; Becker* v. *LaCrosse,* (Wis.), 75 N. W. 84, 67 Am. St. Rep. 874, 40 L. R. A. 829; *Mayor of Detroit* v. *Park Com'rs,* 44 Mich. 602-605, 7 N. W. 180; Teidman on Mun. Corp. sec. 62; 2 Dillon on Mun. Corp., sec. 565.

In *Duncan* v. *Lynchburg, supra,* the city of Lynchburg was operating a rock quarry outside of the city limits, in the course of which a nuisance was created, and suit was brought to recover damages of the city by reason of the nuisance; but it was held that the operation of the rock quarry was *ultra vires,* and therefore the city was not liable in damages, the grounds upon which the undertaking was held to be *ultra vires* being:    First,

because neither the charter nor the general law gave the city authority to operate a rock quarry; and, second, because the operation of the quarry was carried on outside of the corporate limits.

The general law was the same at the time of the accident out of which the suit arises as it was when the case of *Duncan* v. *City of Lynchburg, supra,* arose, and the charter of Harrisonburg grants no power to operate a rock quarry, either within or without the town, unless it arises by implication out of the powers granted to keep its streets in order, to provide work-houses and houses of correction and reformation, and to establish and ·operate a sewer system, water works, gas works, electric lights works, etc., all of which powers were conferred upon the City of Lynchburg by its charter; so that the principle of law applied in the case of *Duncan* v. *Lynchburg* is clearly applicable to this case.

In the former case, speaking with reference to the opinion expressed by Judge Dillon, that for some purposes, such as for the establishment of a pest-house or a cemetery, a municipal corporation may acquire land outside of its territorial boundaries, the opinion by Buchanan, J., says: If this be true, it must be because the lands are indispensably necessary to enable it to protect the health and well-being of its people;" and further: "It might be convenient for a municipal corporation to own and operate a rock quarry, but is manifestly not indispensably necessary that it should do so in order that it may accomplish the objects of its creation."

The case of *Becker* v. *LaCrosse, supra,* is an authority in point here, not only for the proposition that a municipal corporation is not liable in damages for an *ultra vires* act, but also for the proposition that an undertaking carried on by a municipality outside of its limits is, in the absence of express authority, *ultra vires.* See also *Cavenaugh* v. *Boston,* 1 N. E. 834, 52 Am. Rep. (Mass.), 716 and *Albany* v. *Cundiff,* 2 N. Y. 165.

Authorities are cited by the plaintiff for the proposition that *private corporations* are liable for damages arising out of a tort, though the act in which the tort was committed be *ultra vires,* but they have no application here.   While the powers of a private corporation are bestowed and limited by charter, they act for themselves, in their own right, and in the pursuit of gain.   On the other hand municipal corporations exercise delegated powers and act through their officials as a local agency for the exercise of governmental functions.   With reference to the liability of municipal corporations for damages arising out of the negligence of its agents, Judge Dillon says:   "To create such a liability it is fundamentally necessary that the act done which is injurious to others must be within the scope of the corporate powers, as prescribed by charter or positive enactment (the extent of which powers all persons are bound, at their peril, to know) ; in other words, it must not be *ultra vires* in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances."

The argument of the learned counsel for the plaintiff in this case, that "to hold that although it is one of the imperative, unescapable duties of the town to keep its streets in repair, yet all the work and transactions incidental thereto must be wholly performed within the corporate limits of the town, would be to impose most unfortunate limitations upon the town," might be much more properly addressed to the lawmaking power of the State than to the courts.   It might be convenient, and even profitable, for the defendant to operate a rock quarry outside of its corporate limits, in order to obtain material suitable for repairing and keeping in order its streets, but without legislative authority it has no power to do so, and clearly no such power is in express words conferred in its charter, nor necessarily or fairly implied in or incidental to the powers expressly granted.

It follows that the defendant was not liable in damages for the death of the plaintiff's intestate, that the demurrer was properly sustained by the trial court, and that the judgment must be affirmed.

*Affirmed.*