# Richmond

CITY OF RICHMOND v. BOARD OF SUPERVISORS OF HENRICO COUNTY.

January 20, 1958.

Record No. 4743.

Present, Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*J. E. Drinard, City Attorney (James A. Eichner, Assistant City Attorney*, on brief), for the appellant.

*William F. Parkerson, Jr., Commonwealth's Attorney*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

■ On September 20, 1956, the Board of Supervisors of Henrico County, hereinafter called County, instituted this proceeding by filing a bill for a declaratory judgment, Code, § 8-578, against the City of Richmond for the purpose of settling a controversy between the two political subdivisions arising out of a claim by the City that it had the right to construct and operate a jail and jail farm on property it owns in the County, in contravention of the duly enacted zoning ordinance of the County.

The City of Richmond, sometimes hereinafter referred to as the City, answered the bill denying the right of the County of Henrico to regulate by ordinance or otherwise use of the City's property located in the County. It joined in the prayer of the bill that the rights of the parties be adjudicated.

The case was heard on the pleadings and a stipulation of facts. The trial court held adversely to the City, and we granted this appeal.

The stipulated facts, so far as pertinent, may be summarized as follows:

(1) The County "enacted a zoning ordinance on September 5, 1933, pursuant to the provisions of Chapter 15 of the Acts of Assembly of 1927, which ordinance has been amended and revised from time to time, particularly on July 18, 1956, when a zoning district for penal and correctional institutions was established within which jails and jail farms may be constructed, operated and maintained, and excluded from other districts."

(2) The land of the City is situated in a zoning district "presently outside any penal and correctional institution district, to wit: in an agricultural district."

(3) The City is the owner in fee simple of the land on which it proposes to construct and operate its jail and city farm, the land having been acquired for the purpose of enlarging and improving an airport, to which use it has heretofore been devoted.

(4) The establishment, operation and maintenance of a jail or jail farm is a governmental function of the City, and its construction has been duly authorized by the Council of the City as of June 25, 1956.

(5) The County, prior to June, 1956, notified the City that its proposed use of the land was subject to the County's zoning ordinance; and

(6) The City notified the County that it intended to proceed

with its plans to establish and operate the jail and jail farm, without complying with the zoning ordinance of the County.

The County contends that its zoning ordinance enacted pursuant to general statutes applies to all land within its territorial limits, regardless of the ownership of the land; that there is no conflict between the statutes involved and the provisions of the charter of the City; and that, if there be any conflict, the statutes and the charter must be read in the light of the purposes for which they were enacted, and the conflict resolved to give effect to both, if that can be reasonably done.

The City contends that it has the right, both under the general law and under the provisions of its charter, a special law, to construct and operate its penal institution in the County, without complying with any zoning ordinance adopted by the County; and that the power delegated to the City does conflict with the zoning power of the County, and the conflict should be resolved in favor of the City, because of the provisions of Code, § 15-2.

In determining the respective rights of the City and County, a consideration is required of the following statutes and ordinances.

In Title 15, Code of 1950, entitled "Counties, Cities and Towns," § 15-8 (5), of Chapter 1, dealing with the general powers of boards of supervisors, it is provided that:

"In addition to the powers conferred by other sections, the board of supervisors of every county shall have power:

    \*      \*      \*      \*      \*      \*      \*

(5) To adopt such measures as they may deem expedient to secure and promote the health, safety and general welfare of the inhabitants of their respective counties, not inconsistent with the general laws of this State. \* \* \*"

Code, § 15-10 (1) further provides that:

"The boards of supervisors of counties:

(1) Adjoining and abutting any city, within or without the State, having a population of one hundred and twenty-five thousand or more, \* \* \*, are hereby vested with the same powers and authority as the councils of cities and towns by virtue of the Constitution of the State of Virginia or the acts of the General Assembly passed in pursuance thereof, \* \* \*."

The County of Henrico adjoins the City of Richmond, which has a population exceeding 125,000.

Title 15, Chapter 24, Article 3, § 15-855, under the title "Zoning in Certain Counties," provides that:

"For the purpose of promoting the health, safety, morals and general welfare of the community, the board of supervisors of any county:

\*     \*     \*     \*     \*     \*     \*

"Adjoining a city having a population of one hundred thousand or more,

\*     \*     \*     \*     \*     \*     \*

"may regulate by ordinance and restrict

\*     \*     \*     \*     \*     \*     \*

"the location and use of buildings, structures and land for trade, industry, residence or other purposes \* \* \*."

Then follows § 15-856, which provides:

"For any or all of such purposes the board of supervisors may divide the county into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land."

Code, § 15-686, Chapter 21 requires that the council of every city shall provide a jail, the cost thereof, and the land on which it may be erected.

Code, § 15-6 (3) gives every city and town authority to provide all buildings necessary for a prison house and work house, and to maintain and operate the same; but contains no requirement with respect to the location of such prison house.

In Title 15, Chapter 1, § 15-2, the following provision is made:

"Except when otherwise expressly provided, the provisions of this title shall in no wise repeal, amend, impair or affect any other power, right or privilege conferred on cities and towns by charter or any other provisions of the general law."

Code, § 53-129 empowers the corporation court of any city to order jails erected and repaired.

Code, § 53-195 as amended by Chapter 193 of the Acts of Assembly 1954, authorizes the governing body of any county or city of this State to establish and maintain a farm "within their respective jurisdictions or elsewhere" for "any person convicted and sentenced to confinement in the jail of such city * * *."

Chapter 116 of Acts of Assembly, 1948, pages 175 *et seq.*, provides a new charter for the City of Richmond. Section 203 of that charter provides that, in addition to the powers granted by other sections of the charter, the City shall have the power to "control and regulate the use and management of all property of the city, real and personal."

Section 2.04 (c) authorizes the City to "provide for * * * the regulation of the use of parks, playgrounds, * * * and other public property, whether located within or without the city."

Charter § 2.05 (e) authorizes the City "to establish, maintain and operate, within or without the City, a jail for the confinement of prisoners, ordered or sentenced to be confined therein and a jail farm, * * *" Acts 1948, page 187.

Section 17-10 authorizes the City to adopt a comprehensive zoning plan, (Acts of Assembly, 1948, page 250) and § 17-16 prescribes the appointment of a board of zoning appeals by the judge of the Hustings Court of the City of Richmond. Acts of Assembly, 1948, page 253.

Section 17.20 (c) specifically prescribes the powers and duties of the board of zoning appeals in the following language:

"To permit, when reasonably necessary in the public interest, the use of land, or the construction or use of buildings or structures, in any district in which they are prohibited by the ordinance, by any agency of the city, county or state or the United States, provided such construction or use shall adequately safeguard the health, safety and welfare of the occupants of the adjoining and surrounding property, shall not unreasonably impair an adequate supply of light and air to adjacent property, shall not increase congestion in streets and shall not increase public danger from fire or otherwise affect public safety."

The County bases its contention upon the general statutes. The City bases its right under the general law and the special act.

Section 65 of the Constitution provides:

"The General Assembly may, by general laws, confer upon the boards of supervisors of counties, and the councils of cities and

towns, such powers of local and special legislation as it may, from time to time, deem expedient, not inconsistent, with the limitations contained in this Constitution."

In Virginia, counties and cities are independent of each other politically, governmentally and geographically. Each of them, within its particular boundaries, is a coequal political subdivision and agency of the State.*

In *Donable* v. *Harrisonburg*, 104 Va. 533, 535, 52 S. E. 174, we approved the following statement from Dillon on Municipal Corporations, Section 89:

" 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incidental to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied.' " *Winchester* v. *Redmond*, 93 Va. 711; 25 S. E. 1001, 57 Am. St. Rep. 822; *Wallace* v. *Richmond*, 94 Va. 204, 26 S. E. 586, 36 L. R. A. 554; *Railway Co.* v. *Dameron*, 95 Va. 545, 28 S. E. 951; *Duncan* v. *City of Lynchburg*, 2 Va. Dec. 700, 34 S. E. 964, 48 L. R. A. 331.

"In *Jordan* v. *South Boston*, 138 Va. 838, 843, 122 S. E. 265, we said:

" 'A municipal corporation is a mere local agency of the State and has no powers beyond the corporate limits except such as are clearly and unmistakably delegated by the legislature. *Whiting* v. *West Point*, 88 Va. 905, 14 S. E. 698, 29 Am. St. Rep. 750, 15 L. R. A. 860; *Washington, etc., Ry. Co.* v. *Alexandria*, 98 Va. 344, 36 S. E. 385.'

"We approved the following statement in *Light* v. *Danville*, 168 Va. 181, 205, 190 S. E. 276:

" 'The general rule is that a municipal corporation has no extraterritorial powers; but the rule is not without exceptions. The legislature has undoubted authority to confer upon cities and towns jurisdiction for sanitary and police purposes in territory contiguous to the corporation * * *.' "

" 'The power of a municipality, unlike that of the state legislature,

---

*Cf. *Smith* v. *Kelley*, 162 Va. 645, 174 S. E. 842; *Henrico* v. *City of Richmond*, 177 Va. 754, 15 S. E. 2d 309; *Kilgour* v. *Board of Supervisors*, 195 Va. 562, 79 S. E. 2d 601.

must be exercised pursuant to an express grant, and in the particular manner prescribed if one is specified. *South Hill* v. *Allen*, 177 Va. 154, 163, 12 S. E. 2d 770; *Wallace* v. *Richmond*, 94 Va. 204, 26 S. E. 586, 36 L. R. A. 554.'

"\* \* \* See also, *Seymour* v. *Commonwealth*, 133 Va. 775, 778, 112 S. E. 806; *Charlottesville* v. *Marks Shows*, 179 Va. 321, 328, 18 S. E. 2d 890." *Murray* v. *Roanoke*, 192 Va. 321, 326, 64 S. E. 2d 804.

"The doctrine that a special act should be construed as an exception to the general law is not to be invoked unless the two acts cannot be harmonized or reconciled in any other way." *Kirkpatrick* v. *Board of Supervisors*, 146 Va. 113, 125, 136 S. E. 186.

In *Scott* v. *Lichford*, 164 Va. 419, 422, 180 S. E. 393, this is said: "Repeal by implication is not favored, and the firmly established principle of law is that where two statutes are in apparent conflict, it is the duty of the court, if it be reasonably possible, to give to them such a construction as will give force and effect to each."

In *South Norfolk* v. *Norfolk*, 190 Va. 591, 601, 58 S. E. 2d 32, we said that "a later act does not by implication repeal an earlier act unless there is such a clear, manifest, controlling, necessary, positive, unavoidable, and irreconcilable inconsistency and repugnancy, that the two acts cannot, by a fair and reasonable construction, be reconciled," and on page 602, 190 Va., *supra*, we further said: "\* \* \* that where two statutes are passed by the same session of the legislature, as was the case here, that fact furnishes strong evidence that they were intended to stand together." ·

See M. J., Statutes, § 40, page 294 and 50 Am. Jur., Statutes, § 547, page 553; *Joy* v. *Green*, 194 Va. 1003, 1008, 76 S. E. 2d 178.

It is·a well established rule of construction that full force and effect must be given to each provision of statutory law. It must clearly appear that the statute is in conflict with a former statute and that the two are so inconsistent that both cannot prevail before the prior statute may be held to be repealed or inoperative. Apparent inconsistencies must be reconciled if reasonably possible. Repeal of a statute by implication is not favored. *Nexsen* v. *Board of Supervisors*, 142 Va. 313, 320, 128 S. E. 570; *Bray* v. *County Board*, 195 Va. 31, 77 S. E. 2d 479; *County of Fairfax* v. *Alexandria*, 193 Va. 82, 68 S. E. 2d 101. The same rule applies to statutes enacted at the same session of the legislature.

Code, § 15-855, formerly § 1, Chapter 15, of the Acts of Assembly, 1927, as amended, was amended and reenacted by Chapter 133, Acts

of Assembly, 1948, approved March 5, 1948, the date of approval of the charter of the City of Richmond, Chapter 116, Acts, 1948, page 175. The last sentence of § 3034 of Code of Virginia, 1919, was recodified as § 15-2 of the Code of Virginia, 1950, by an Act of the General Assembly, approved April 6, 1948. Thus, the charter of the City of Richmond, the County's power to zone, and § 15-2, Code of Virginia, 1950, were all approved at the same session of the General Assembly.

In *Wicker Apartments* v. *City of Richmond*, 199 Va. 263, 99 S. E. 2d 656, we gave effect both to the statutes empowering the City to establish a jail and to the zoning ordinance of the City. We held that before the City of Richmond could make use of its land within its boundaries and construct buildings thereon for a detention home for juveniles, it must apply for and obtain a permit from its board of zoning appeals, (Charter §§ 17.16 and 17.20 (c)).

The purpose of zoning by a county is the same as that by a city, that is, to promote the health, safety, morals, and general welfare of the community, to protect and conserve the value of buildings and encourage the most appropriate use of the land.

The statutes relied on by the City give it the right to establish a jail beyond its corporate limits and no more. They protect the City in the performance of an extraterritorial Act, which might otherwise be *ultra vires*. They do not, however, expressly or impliedly authorize the City to establish a penal institution at any place, inside or outside of the City, in violation of the zoning ordinance of such place. Had the legislature intended that the City should have such right, it would have said so in the enactments conferring the right.

We find no conflict between the statutes giving the County the right to enact zoning laws and those authorizing the City to maintain and operate a penal institution outside of its boundaries. Each of them, by a fair and reasonable construction, can be given full force and effect.

Nor do we find anything in the legislative history of Code, § 15-2 which supports the claim of the City that this section exempts it from compliance with the zoning ordinance of the County. The ordinance of the County does not take away, impair, or amend the right of the City to establish its jail beyond the limits of the City. The City may establish its jail or jail farm in the district of the County within which such institutions are permissible, or it may follow the procedure prescribed in the ordinance of the County,

and request an amendment of the ordinance to permit the use of its land for the desired purpose. From arbitrary or unreasonable action by zoning officers of the County, it may apply for judicial review.

We find it difficult to believe that the legislature intended that a city should be subject to its own zoning regulations, but free from similar regulations in a county in the exercise of the extraterritorial power to establish a jail beyond its borders. Surely the legislature did not intend to give a city power to establish a jail or jail farm in any residential area outside of a city, in violation of laws designed to promote the health, safety, morals, and general welfare of the inhabitants of such area.

In support of its contention, the City cites and relies upon textbook authorities and some cases from other jurisdictions, holding that the Federal Government, States, municipalities, and other political subdivisions are not bound by the requirements of a zoning ordinance, especially when the proposed use does not constitute a nuisance, and where the buildings are for government purposes and not merely for proprietary purposes. In most of the cases cited, the decisions depend upon the peculiar laws of the State involved and the facts to which they are applicable. In none are the facts stated identical with those here. We do not think that the holding of the authorities cited by the City is controlling under the peculiar facts of the case before us, which must be determined in accordance with long settled rules of construction adopted in this jurisdiction.

For the reasons stated, the decree appealed from is affirmed.

*Affirmed.*